OPINION *Page 2 
 I. Facts/Procedural Posture {¶ 1} Defendant-appellant, Toby Langenkamp (hereinafter "Langenkamp"), appeals the judgment of the Shelby County Court of Common Pleas overruling his motion to withdraw his no contest plea and his motion for post-conviction relief. For the reasons that follow, we affirm.
 {¶ 2} On March 17, 2006, Langenkamp was indicted on two counts of rape, violations of R.C. 2907.02(A)(1)(b), first degree felonies; and one count of rape, a violation of R.C. 2907.02, a first degree felony in case no. 06CR000075. On May 16, 2006, Langenkamp was indicted on three counts of unlawful sexual *Page 3 
conduct with a minor, violations of R.C. 2907.04, third degree felonies in case no. 06CR000138.
 {¶ 3} On June 18, 2007, Langenkamp plead no contest to an amended indictment of one count of unlawful sexual conduct with a minor, a third degree felony, in case no. 06CR000075, and to one count of unlawful sexual conduct of a minor, a third degree felony, in case no. 06CR000138, pursuant to a plea agreement. The trial court accepted Langenkamp's pleas and found him guilty. On August 21, 2007, the trial court sentenced Langenkamp to four years imprisonment in case no. 06CR000075 and four years of imprisonment in case no. 06CR000138. The trial court ordered that the sentences be served consecutively.
 {¶ 4} On September 19, 2007, Langenkamp filed an appeal with this Court, and we subsequently affirmed the trial court's judgment.State v. Langenkamp, 3d Dist. Nos. 17-07-08, 17-07-09,2008-Ohio-1136.[1] On that same day, Langenkamp also filed his motion to withdraw his no contest plea and his post-conviction petition to vacate with the trial court. A hearing was held on December 14, 2007. On January 22, 2008, the trial court overruled the motions.[2] *Page 4 
 {¶ 5} Langenkamp filed a motion for special remand with this Court arguing that a hearing was conducted on the motion to withdraw and the petition to vacate; however, the trial court's judgment addressed and determined only the *Page 5 
motion to withdraw. As such, Langenkamp argued that the trial court's judgment was not a final appealable order. On April 29, 2008, this Court found that the trial court's judgment was a final order, and that the judgment was sufficient "for purpose of providing final determination of both pleading[s]"; and therefore, we denied Langenkamp's motion for special remand.
 {¶ 6} It is from the trial court's judgment overruling his motion to withdraw and his petition to vacate that Langenkamp appeals and asserts four assignments of error for review. For clarity of analysis, we have combined Langenkamp's assignments of error where appropriate.
 II. Standards of Review {¶ 7} Crim. R. 32.1 provides, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Manifest injustice has been defined by this Court as "a `clear or openly unjust act.'" State v. Leugers, 3d Dist. No. 1-05-90,2006-Ohio-6928, ¶ 9, quoting State v. Walling, 3d Dist. No. 17-04-12,2005-Ohio-428, ¶ 6.
 {¶ 8} A Crim. R. 32.1 motion is "addressed to the sound discretion of the trial court, and the good faith, credibility, and weight of the movant's assertions in support of the motion are matters to be resolved by the trial court." State v. Reed, *Page 6 
7th Dist. No. 04 MA 236, 2005-Ohio-2925, ¶ 7, citing State v. Smith
(1977), 49 Ohio St.2d 261, 361 N.E.2d 1324, paragraph two of the syllabus. Notably, a post-sentence withdrawal of a guilty plea is only available in "extraordinary cases." Smith, 49 Ohio St.2d at 264.
 {¶ 9} A defendant seeking withdrawal of his no contest pleas has the burden of proof. State v. Totten, 10th Dist. Nos. 05AP-278, 05AP-508,2005-Ohio-6210, ¶ 5. An appellate court will not reverse the trial court's decision on a motion to withdraw a no contest plea absent an abuse of discretion. Id., citing State v. Nathan (1995),99 Ohio App.3d 722, 725, 651 N.E.2d 1044. An appellate court reviews the denial of a post-conviction relief motion under an abuse of discretion standard as well. State v. Wyerick, 3d Dist. No. 10-07-23, 2008-Ohio-2257, ¶ 13, citing State v. Jones, 3d Dist. No. 4-07-02, 2007-Ohio-5624, ¶ 16;State v. Campbell, 10th Dist. No. 03 AP-147, 2003-Ohio-6305; State v.Calhoun (1999), 86 Ohio St.3d 279, 284, 714 N.E.2d 905. An abuse of discretion implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 III. Analysis ASSIGNMENT OF ERROR NO. I The Trial Court prejudicially erred in failing to allow the Defendant to withdraw his plea of no contest in this matter on the ground that he did not waive his rights and enter his pleas voluntarily, knowingly, and intelligently because he did so based *Page 7 on the ineffective assistance of counsel who provided erroneous advice that the waiver was appropriate because the Defendant had a plea agreement with the State Court and for concurrent sentences.
 ASSIGNMENT OF ERROR NO. III The Trial Court prejudicially erred in failing to allow the Defendant to withdraw his plea of no contest because the evidence at the hearing clearly demonstrated that the promise of concurrent sentences was a significant inducement for the Defendant to waive his rights and enter his plea of no contest such that it was a manifest injustice to not permit the Defendant to withdraw his plea when the Court below found there was no enforceable contract with the State and Court for concurrent sentences.
 {¶ 10} In his first and third assignments of error, Langenkamp argues that he entered his no contest plea because his attorney told him that there was an agreement for concurrent sentences. Langenkamp argues that since the trial court found that there had been no agreement for concurrent sentences, the trial court abused its discretion when it failed to find that the no contest plea should be withdrawn due to erroneous advice from counsel. Langenkamp maintains that erroneous advice from counsel about sentencing, which induces a defendant to waive his right to jury trial, renders trial counsel's assistance ineffective. Further, Langenkamp argues that where the promise of concurrent sentences induces a plea, "the failure of that representation renders the plea involuntary." (Appellant's Brief at 13). *Page 8 
 {¶ 11} The trial court did not err in finding that Langenkamp failed to establish a manifest injustice; and therefore, it did not abuse its discretion in overruling his motion to withdraw and post-conviction motion to vacate. Our conclusion rests upon a five-fold analysis. First, we will examine the trial court's applicable findings of fact and conclusions of law. Second, we will examine the record supporting the trial court's judgment. Third, we will examine the pertinent case law involving erroneous sentencing advice from counsel. Fourth, we will apply the pertinent rule of law to the facts of this case. Fifth, we will discuss the policy grounds underlying our analysis.
1. Trial Court's Findings of Fact Conclusions of Law {¶ 12} In its judgment entry, the trial court first found that there was not an underlying agreement for concurrent sentences. The trial stated:
 In an effort to get a sense from Judge Schmitt about the length of incarceration, especially whether the sentences would be run concurrently or consecutively, [defense counsel] enlisted the services of the Bailiff, Vic Elliot. By agreement of counsel, Mr. Elliot telephoned Judge Schmitt about the Defendant's inquiry about whether the sentences would be served concurrently or consecutively; Mr. Elliot also expressed the Defendant's desire for a concurrent sentence. By subsequent phone call, Mr. Elliot advised both attorneys that Judge Schmidt had stated that the sentences would be served concurrently if there was nothing in the pre-sentence investigation.
(Jan. 22, 2008 JE at 3). Based on this finding of fact, the trial court found that no agreement existed for concurrent sentencing; rather, the trial court judge's *Page 9 
statements were merely "pre-trial observations and impressions," indicating "what the Judge was willing to consider." (Id. at 5). In support of this conclusion, the trial court noted that if an agreement existed, as Langenkamp argued, then Crim. R. 11(F) required that such an agreement be stated on the record during the change of plea hearing. The trial court then noted that no agreement was alleged by the defendant, the judge, or either attorney during the June 18, 2007 plea colloquy. (Id.).
 {¶ 13} Furthermore, the trial court found that the written change of plea petition indicated that: (1) the maximum period of imprisonment was 10 years; (2) "no officer of the Court or any attorney has promised or suggested that [the Defendant] will receive a lighter sentence, probation, or any other form of leniency in exchange for my No Contest plea . . ."; (3) there "is no underlying agreement upon which this plea is based . . ."; and (4) the sentence to be imposed "is solely a matter within the control of the Judge". (Id., citing Doc. No. 84). The trial court thereafter found that the trial judge had substantially complied with Crim. R. 11, 32(A), 32.2. (Id. at 7).
 {¶ 14} The trial court then determined that Langenkamp had not demonstrated manifest injustice based on its previous findings, and because the plea agreement protected Langenkamp from three more serious charges, one additional charge, and a possible forty-five (45) year sentence. (Id.). The trial *Page 10 
court also noted that Judge Schmitt had specifically found that Langenkamp suffered no injustice by an eight (8) year sentence. (Id., citing Aug. 20, 2007 Tr. at 70-72).
 {¶ 15} The trial court also found that, "even if the Defendant did receive confusing advice from counsel," Langenkamp failed to establish a manifest injustice because: (1) the record set forth the objective terms of the plea agreement; (2) the record indicated that the sentencing judge possessed sole sentencing discretion; and (3) the defendant's motion to withdraw was based upon a change of heart with regard to his culpability or the propriety of his sentence. (Id. at 8-9).
 {¶ 16} For all these reasons, the trial court overruled Langenkamp's motion to withdraw and motion for post-conviction relief.
2. The Record {¶ 17} The trial court's finding that no agreement for concurrent sentencing existed is supported by the record. Vic Elliot, the judge's bailiff, testified that prosecutor Bauer informed him that Langenkamp's attorney, O'Brien, and he may have a plea agreement worked out, and Bauer asked him if he would "contact the judge to see what his attitude would be on sentencing." (Dec. 14, 2007 Tr. at 103). Elliot testified that:
 Judge Schmidt advised me that he didn't like to discuss his sentencings with anybody; but if they got a plea agreement *Page 11 worked out, that he would go along with concurrent sentencing if that's — on concurrent sentencing. If nothing comes out in the PSI, then he would say that he'd probably run the sentences concurrent.
(Id. at 104-05; see also, id. at 120). Elliot testified that he relayed this exact information to both Bauer and O'Brien via a three-way phone call. (Id. at 121). Bauer verified Elliot's testimony concerning the judge's comments. (Id. at 127-29). As such, the trial court found Elliot's testimony credible and also found that Langenkamp's allegations that the representation about concurrent sentencing came from the prosecutor was not supported by the evidence. (Jan. 22, 2008 JE at 3). Because the trial court had competent, credible evidence Judge Schmitt would probably run the sentences concurrent assuming that nothing negative would be in the PSI, we find that the trial court's finding that no agreement existed is supported by the record.
 {¶ 18} We also find that the record supports the trial court's finding that neither party mentioned the existence of an agreement for concurrent sentences during the change of plea hearing. (Jun. 18, 2007 Tr.). Furthermore, the record supports the trial court's finding that Judge Schmitt substantially complied with Crim. R. 11 and followed Crim. R. 32(A) and 32.2. (Id.); (Id. at 11). Finally, we find that the trial court's findings of fact with regard to the declarations appearing in the written plea of no contest are also supported by the record. (Doc. No. 84). *Page 12 
3. Whether Counsel's Erroneous Advice Concerning Sentencing Created aManifest Injustice
a. Erroneous Advice or Mere Speculation?
 {¶ 19} The trial court characterized O'Brien's advice to Langenkamp as "speculation regarding the likely sentence." (Jan. 22, 2008 JE at 8) (emphasis added). The trial court, however, also concluded that "even if [Langenkamp] did receive confusing advice from counsel," manifest injustice does not "ipso facto result from counsel's erroneous advice concerning the sentence that will be imposed." (Id. at 8, citingState v. Blatnik (1984), 17 Ohio App.3d 201, 203, 478 N.E.2d 1016). The trial court also found that the testimony of counsel for both sides was credible, and specifically did not find that O'Brien's advice was erroneous. (Id.). Although we agree with the trial court's citation of law, we disagree with its characterization of O'Brien's advice as mere speculation.
 {¶ 20} Although it was clear, based on the testimony of both Elliot and Bauer, that the judge's sentencing comments were both conditional and speculative, it was just as clear that O'Brien misrepresented the judge's comments to Langenkamp. O'Brien testified he told Langenkamp that "the sentences are guaranteed concurrent." (Dec. 14, 2007 Tr. at 19). O'Brien further testified:
 * * * my client believed that. He — he believed it because I told him it. * * * I told my client, it's concurrent; and — as a result of me telling my client that, on June 18th, the day of the trial, we came in and pled * * * I misled my client because I told him it would be concurrent. And I know what I heard. *Page 13 But he believed it, he was no party to any of these conversations, he took my word for it as an officer of the court. I — I gave him the best that I had at the time, and Dr. Bromberg was there when I — when — while I was still on the phone when we got the announcement from the judge. If it had been anything other than what I'm tellin' you right now, if that — that conditional language that people are tellin' you was part of it, if it had been in actuality a part of it at the time, no plea would have entered on June 18. We would have been in a trial. So I'm adamant — I hope this Court realizes we are adamant on that particular issue, and it became the most crucial issue in this case. My client never should have faced a sentence that exceeded five.
(Id. at 21-23). Furthermore, the trial court found that O'Brien's testimony was credible. (Jan. 22, 2008 JE at 8) ("the Court has no reason — in this matter or any other professional dealing with both attorneys — to disbelieve either attorney.").
 {¶ 21} O'Brien's testimony was also verified by Dr. David Bromberg, the psychologist that examined Langenkamp. (Dec. 14, 2007 Tr. at 41-42). Dr. Bromberg testified that he was present when O'Brien told Langenkamp that there was a deal, and that, based on O'Brien's representations, he thought that Langenkamp was to be sentenced concurrently for a total of five years. (Id. at 48-50). Dr. Bromberg also testified that Langenkamp was reluctant to plea because he insisted upon his innocence, but that he ultimately agreed to plea. (Id. at 47). Dr. Bromberg further testified that he was shocked when Langenkamp was sentenced consecutively because the sentence did not reflect the agreement reached. (Id. at 51). *Page 14 
 {¶ 22} Langenkamp testified that his wife encouraged him to take a plea deal if he would be sentenced concurrently. (Id. at 65). Langenkamp further testified that he entered his plea based on the fact that he was to be sentenced concurrently and would face, at most, five years imprisonment. (Id. at 66-67). Langenkamp's mother, Mary Ann Langenkamp, also testified that her son had told her that he would be sentenced "five years concurrent sentences for both crimes" in exchange for his plea. (Id. at 92). In support of his motion to withdraw, Langenkamp also submitted affidavits from Dr. Bromberg, his wife, and himself, all indicating that he was to be sentenced concurrently. (Doc. Nos. 115, 117, 123).
 {¶ 23} Contrary to the trial court's characterization, O'Brien's testimony indicates that he did not "speculate" as to Langenkamp's sentence, but rather, "guaranteed" the sentences were concurrent. (Jan. 22, 2008 JE at 8); (Dec. 14, 2007 Tr. at 19). Since the trial court found both O'Brien's testimony regarding his representations to Langenkamp and Elliot's testimony regarding Judge Schmitt's sentencing comments credible, the only logical conclusion is that O'Brien misrepresented Judge Schmitt's comments (via Elliot) to Langenkamp. As such, O'Brien's representation to Langenkamp must be labeled for what it was — erroneous advice. *Page 15 
b. When Erroneous Sentencing Advice Creates a Manifest Injustice
 {¶ 24} Since the trial court's conclusion that Langenkamp failed to establish a manifest injustice was based, in part, on its incorrect characterization of O'Brien's advice as mere speculation, a further analysis is required.
 {¶ 25} Whether a manifest injustice exists for purposes of a post-sentence withdrawal of guilty or no contest plea by virtue of counsel's sentencing advice depends upon the nature of that advice. The case law indicates a clear demarcation between counsel's sentencing advice that is a "good faith estimate" or "speculative," and counsel's erroneous representation of a promised sentence. The former type of advice which a defendant relies upon does not create a manifest injustice necessary for a post-sentence withdrawal of guilty or no contest plea. State v. Blatnik (1984), 17 Ohio App.3d 201, 203,478 N.E.2d 1016, citing U.S. v. Hawthorne (C.A. 3, 1974), 502 F.2d 1183, cert. denied (1976), 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177;State v. Testerman (Aug. 17, 2001), 1st Dist. Nos. C-010040, B-0006181, at *3, citations omitted; State v. Ransom (Aug. 12, 1999), 10th Dist. No. 98AP-1613, at *3; State v. Lambros (1988), 44 Ohio App.3d 102,103-04, 541 N.E.2d 632. The latter type of advice which a defendant relies upon may create a manifest injustice, and thus, may require a post-sentence withdrawal of plea. Testerman, supra, citing State v.Longo (1982), 4 Ohio App.3d 136, 140, 446 N.E.2d 1145, quoting U.S. exrel. Elksnin v. Gilligan (S.D.N.Y. 1966), *Page 16 256 F.Supp. 244, 249, citing U.S. ex rel. Thurmond v. Mancusi (E.D.N.Y. 1967), 275 F.Supp. 508, 517. Courts have noted this same distinction between types of advice given by counsel in the context of post-conviction petitions as well. See, e.g., State v. Pahl, 3d Dist. No. 5-02-65, 2003-Ohio-3181, ¶ 20; State v. Wells (Nov. 24, 1999), 2nd Dist No. 17521; State v. Post (Jan. 2, 1997), 9th Dist. No. 96CA006399;State v. Pecina (Jan. 14, 1994), 6th Dist. No. 93OT025; State v.Maloney (Nov. 7, 1983), 12th Dist. No. CA82-10-105; State v.Lindsey (Feb. 4, 1981), 1st Dist. No. C-800076.
 {¶ 26} This case deals with the latter type of advice — the "promised sentence." The court in Testerman stated that in order to demonstrate a manifest injustice by virtue of this type of erroneous advice, the defendant must establish that: (1) defense counsel mistakenly represented to him/her what has been promised by way of a sentence; and (2) the erroneous representation played a substantial part in his/her decision to plead guilty. 1st Dist. Nos. C-010040, B-0006181, at *3, citations omitted. Other courts, however, have indicated that the defendant's reliance upon counsel's erroneous representation must also be justified. For example, the court in State v. Garn stated:
 As to appellant's claim that he received erroneous advice from counsel regarding the sentence to be imposed by the trial court, the record indicates appellant understood the maximum possible sentence, that no promises of a particular sentence had been made to him and that appellant knowingly and voluntarily entered his guilty pleas. *Page 17 
5th Dist. No. 02 CA 45, 2003-Ohio-820, ¶ 30. In State v. Jackson, the court likewise stated that, "regardless of what appellant may have been told by his attorney, appellant was aware of the potential sentences he faced." 5th Dist. Nos. 04CA-A-11-078, 04CA-A-11-079, 2005-Ohio-5173, ¶ 25. In State v. Parker, the court stated: "[e]ven if appellant's attorney did indicate that appellant would not receive the maximum sentence possible, appellant could not have reasonably relied upon his attorney's advice over the judge's statement." (Jan. 6, 1998), 4th Dist. No. 96CA35, at *3. See also, State v. Leeper, 5th Dist. No. 03 CA 35,2004-Ohio-5362, ¶¶ 13-30; State v. Yearby (Jan. 24, 2002), 8th Dist. No. 79000, at *3; State v. Sharp (Jun. 22, 1993), 10th Dist. No. 92AP-1185, at *3; State v. Brondel (Oct. 31, 1988), 2nd Dist. No. 87-CA-51, at *3. Similarly, federal courts have rejected defendants' claims that they unknowingly, involuntarily, or unintelligently entered pleas based on counsel's promised sentence where the defendant "could not have been reasonably justified in relying on any such promise." Mojtowicz v.U.S. (C.A. 2, 1977), 550 F.2d 786, 792, citing Mosher v. LaValle (C.A. 2, 1974), 491 F.2d 1346, cert. denied, 416 U.S. 906, 94 S.Ct. 1611,40 L.Ed.2d 111 (1974); U.S. ex rel. Curtis v. Zelker (C.A. 2, 1972),466 F.2d 1092, 1098. See also, U.S. v. Bradley (C.A. 11, 1990),905 F.2d 359, 360; Davila v. U.S. (E.D.N.Y. 2008), No. 07-CV-1320, at *12;U.S. v. Gibbs (D. Kan. 2007), No. 06-10231-02, at *5. The cases finding that a defendant could not reasonably *Page 18 
rely upon counsel's erroneous sentencing advice — and therefore, failed to establish a manifest injustice — are generally those where the defendant was informed about the possible sentences he/she faced during a Crim. R. 11 colloquy, in a written plea agreement, or both. See, e.g.,State v. Jackson, 2005-Ohio-5173, ¶¶ 24-26.
 {¶ 27} After a review of the applicable case law, this Court holds that in order for a defendant to establish a manifest injustice sufficient for a post-sentence withdrawal of a guilty or no contest plea, a defendant must establish that: (1) defense counsel mistakenly represented what has been promised by way of a sentence; (2) the erroneous representation played a substantial part in his/her decision to plead guilty or no contest; and (3) he/she was reasonably justified in relying upon counsel's erroneous representation.[3]
4. Whether Counsel's Erroneous Sentencing Advice Created a ManifestInjustice Sub Judice {¶ 28} Applying our three-prong test and assuming prongs one and two, Langenkamp has failed to establish a manifest injustice because he was not reasonably justified in relying upon his counsel's erroneous representation. The written plea agreement specifically provided, in pertinent part:
 If you are pleading "no contest" and found guilty to multiple offenses, your sentences and fines could be ordered to be served *Page 19 concurrent (run together), or could be ordered to be served consecutive (one after the other). This means that if there are multiple offenses you face a maximum of 10 years and $20,000 dollars in fines.
 * * *
 13. I declare that no officer of this Court or any attorney has promised or suggested that I will receive a lighter sentence, probation, or any other form of leniency in exchange for my No Contest plea; and if anyone did make such a promise or suggestion, that I know that he or she had no authority to do so.
 * * *
 I know that the sentence I will receive is solely a matter within the control of the Judge. I request leniency, but I am prepared to accept any punishment permitted by law which this Court sees fit to impose. * * *
 * * *
 I OFFER MY PLEA OF NO CONTEST FREELY AND VOLUNTARILY AND OF MY OWN ACCORD WITH FULL UNDERSTANDING OF ALL MATTERS SET FORTH IN THE INDICTMENT/INFORMATION AND IN THIS PETITION.
(Doc. No. 84). During the change of plea hearing, the trial judge inquired as follows:
 THE COURT: * * * First of all, let me ask you this. Has anyone threatened you or promised you anything to get you to plead here this morning?
 THE DEFENDANT: No, Your Honor.
 — THE COURT: Okay. And you understand the Court is not bound by any promises that may have been made to you about sentencing? Do you understand that?
 THE DEFENDANT: Yes, Your Honor.
 * * *
 THE COURT: Okay. Now has your attorney explained everything and answered all your questions? THE DEFENDANT: Yes, Your Honor. THE COURT: Are you satisfied with the advice he's given you? THE DEFENDANT: Yes, Your Honor. *Page 20 
 * * *
 THE COURT: Okay. Now you're gonna be entering a plea to two charges here. Both of these are felony offenses of the third degree. Each one carries with it a possible term of up to five years in prison and a fine up to $10,000. Are you aware of the possible penalties you may be facing? THE DEFENDANT: Yes, Your Honor.
 THE COURT: Okay. * ** Now, your attorney has placed on the — on the bench this document that you have signed. It's called a petition to enter a plea of no contest. Did you have an opportunity to go through this document? THE DEFENDANT: Yes, Your Honor.
 THE COURT: Do you have any questions about what's contained in this document? THE DEFENDANT: NO, Your Honor.
 THE COURT: You're satisfied you understand it? DEFENDANT: Yes, Your Honor.
 THE COURT: Mr. O'Brien, I'll ask you. Did you go through this document with your client, and are you satisfied that he understands it?
 MR. O'BRIEN: Your Honor, that is correct, and I've signed a — a statement to that effect.
 THE COURT: And you're satisfied that he understands it? MR. O'BRIEN: Yes, I'm satisfied.
 * * *
 THE COURT: Then lastly, I need to ask you, are you entering your pleas here this afternoon — or this morning — freely and voluntarily?
 THE DEFENDANT: Yes, Your Honor.
(Jun. 18, 2007 Tr. at 4-9). The record is clear that Langenkamp knew if any promise was made to him by any officer of the court or any attorney it was made without the authority to do so. (Doc. No. 84). The trial court also informed Langenkamp that it was not bound by any promises that may have been made to him. (Jun. 18, 2007 Tr. at 5). Under these circumstances, we cannot find that *Page 21 
Langenkamp was reasonably justified in relying upon his counsel's erroneous representation that his sentences would be ordered concurrent. So, even assuming that Langenkamp established prongs one and two, he has failed to establish prong three; and therefore, Langenkamp failed to demonstrate manifest injustice.[4] As such, the trial court did not err in denying Langenkamp's motion to withdraw nor did it err in denying his motion to vacate.
5. Policy Considerations Manifest Injustice {¶ 29} "The underlying purpose, from the defendant's perspective, of Crim. R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." State v. Ballard (1981), 66 Ohio St.2d 473, 479-80,423 N.E.2d 115.
 {¶ 30} Crim. R. 11(C) also creates a record by which an appellate court can determine if the pleas were entered voluntarily. State v. Griggs,103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 11. However, Crim. R. 11(C)'s ultimate purpose "is to insure that there was a voluntary, knowing, and intelligent waiver of the constitutional rights abandoned by a plea of guilty, and of the nature and extent of the punishment involved by such a plea." State v. Branham (July 22, 1987), 3d Dist. No. 11-86-3, at *2. As such, a trial court's adherence to Crim. R. 11(C), *Page 22 
absent any indicia of coercion, creates a presumption that the defendant's plea was entered knowingly, voluntarily, and intelligently.State v. Ogletree, 2nd Dist. No. 21995, 2008-Ohio-772, ¶ 7, citingState v. Ferbrache, 6th Dist. No. WD-06-042, 2007-Ohio-746; State v.Smith (Dec. 4, 1998), 11th Dist. No. 97-T-0164, at *2; State v.Hall (Apr. 27, 1989), 8th Dist. No. 55289, at *1.
 {¶ 31} The trial court here complied with Crim. R. 11(C). At the change of plea hearing, the trial court specifically informed Langenkamp thateach of the two offenses he pled to carried a five year sentence. (June 18, 2007 Tr. at 6). The trial court also asked Langenkamp if any promises had been made to him, and he replied "no". (Id. at 4-5). If there was an agreement for concurrent sentences, Langenkamp should have brought that to the trial court's attention during the Crim. R. 11 colloquy. The trial court judge also specifically stated that he was not bound by any promises made regarding sentencing. (Id. at 5). Under these circumstances, Langenkamp's tendered no contest pleas are presumed to have been made knowingly, voluntarily, and intelligently. The record of the Crim. R. 11 colloquy fails to indicate otherwise, and Langenkamp has failed to demonstrate otherwise.
 {¶ 32} For all these reasons, Langenkamp's first and third assignments of error are overruled. *Page 23 
 ASSIGNMENT OF ERROR NO. II The Trial Court prejudicially erred in failing to allow the Defendant to withdraw his plea of no contest because the undisputed evidence was that the prosecutor promised to remain silent on the issue of sentencing in spite of his promise made a recommendation to the Judge's staff.
 {¶ 33} In his second assignment of error, Langenkamp maintains that the prosecutor agreed to remain silent on the issue of sentencing as part of the plea agreement, and the prosecutor violated the plea agreement as evidenced by his statement on the record that he had made his recommendation to the Judge's staff. Langenkamp maintains that the prosecutor's breach of the plea agreement renders the plea a manifest injustice that requires a withdrawal. The State, on the other hand, argues that it did not breach the agreement because it did not make any sentencing recommendations.
 {¶ 34} Langenkamp's argument lacks merit. Langenkamp did not raise this issue in either his motion to withdraw or his petition to vacate; and therefore, he has waived this issue for purpose of appeal. State v.Gegia, 157 Ohio App.3d 112, 2004-Ohio-2124, 809 N.E.2d 673, ¶ 33 (motion to withdraw); State v. Vincer, 3d Dist. No. 9-03-32, 2003-Ohio-6703, ¶ 7 (petition to vacate); R.C. 2953.21(A)(4) ("* * * any ground for relief that is not so stated in the petition is waived.").
 {¶ 35} Langenkamp's second assignment of error is, therefore, overruled. *Page 24 
 ASSIGNMENT OF ERROR NO. IV Based on Assignments 1 through 3, the denial of the motion to withdraw violates the defendant's constitutional rights under the Fifth and Sixth Amendments to the United States Constitution and its Ohio Constitutional counterparts.
 {¶ 36} In his fourth and final assignment of error, Langenkamp maintains that his constitutional rights have been violated based upon his aforementioned errors. Since this Court has found Langenkamp's previous errors meritless, and those errors are the basis for Langenkamp's fourth assignment of error, we find his fourth assignment of error is also meritless.
 {¶ 37} Langenkamp's fourth assignment of error is, therefore, overruled.
 IV. Conclusion {¶ 38} Upon review of the entire record in this case, this Court cannot find that the trial court abused its discretion by overruling both Langenkamp's motion to withdraw and petition to vacate. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments Affirmed.
 SHAW, P.J., and ROGERS, J., concur.
[1] The Ohio Supreme Court did not accept the case for review.State v. Langenkamp, 119 Ohio St.3d 1413, 2008-Ohio-3880,891 N.E.2d 771. In addition, this Court simply notes that Westlaw has mistakenly identified our Court's prior decision as case no. 17-08-09; it should be case no. 17-07-09.
[2] This Court notes that the trial court's hearing and ruling on Langenkamp's Crim. R. 32.1 motion to withdraw occurred prior to our disposition of Langenkamp's direct appeal. Langenkamp, 2008-Ohio-1136, decided Mar. 17, 2008.
[3] As a sidebar, this Court notes that the trial court's judgment entry indicates that it considered this factor, albeit not by the nomenclature given herein, when it stated, "[t]he Court's decision is based primarily upon the objective facts from the transcripts and pleadings filed herein." (Jan.22, 2008 JE at 8).
[4] The Court notes that it is not clear whether Langenkamp established prong two — that counsel's erroneous representation played a substantial part in his decision to plead no contest. The trial court noted that "the Defendant has experienced a change in heart regarding either his culpability for the criminal conduct or the propriety of the sentence imposed upon him." (Jan. 22, 2008 JE at 9). *Page 1