[Cite as *State v. Ford*, 2012-Ohio-1280.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO.  14-11-13

    v.

GEOFFREY S. FORD,                         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 10-CR-0022

**Judgment Affirmed**

Date of Decision:   March 26, 2012

APPEARANCES:

    *Alison Boggs*  for Appellant

    *David W. Phillips*  for Appellee

**SHAW, P.J.**

{¶1} Defendant-Appellant, Geoffrey S. Ford ("Ford"), appeals the June 2, 2011 judgment of the Union County Court of Common Pleas denying his pre-sentence motion to withdraw his guilty plea.

{¶2} This case arose out of an incident that occurred in the early morning hours of January 26, 2010, in which the state alleged that Ford broke into a woman's home carrying a knife, threatened to kill her if anyone else was in the apartment or if she screamed, and proceeded to rape her vaginally. Afterward, Ford attempted to force the victim to perform fellatio, again threatening her with the knife. Before leaving, Ford looked for items to steal including money or the victim's television. When the victim informed him that she had no money Ford told her he would kill her if she called the police, and then fled. [1]

{¶3} On April 14, 2010, Ford was indicted by the Union County Grand Jury for one count of Rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, with a sexually violent predator specification, R.C. Spec. 2941.148; Attempted Rape, R.C. 2923.02(A), as it relates to R.C. 2907.02(A)(2), a felony of the first degree, with a sexually violent predator specification, R.C. Spec. 2941.148; two counts of Aggravated Burglary, in violation of R.C. 2911.11(A)(1),

---

[1] These allegations are based on the Indictment (Doc. No. 2), the Bill of Particulars, (Doc. No. 16), and the state's narrative of facts at the guilty plea hearing (Apr. 19, 2011 Tr. at 23-26). At the plea hearing Ford did not contest that the state's evidence would have been consistent with these allegations, and agreed that he committed those acts.

both felonies of the first degree; Intimidation of Attorney, Victim or Witness in a Criminal case in violation of R.C. 2921.04(B), a felony of the third degree; Kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree, with a specification that Ford is a sexually violent predator, R.C. Spec. 2941.148, and the specification that Ford committed the offense with a sexual motivation, R.C. Spec. 2941.147; and Aggravated Robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree.

{¶4} At arraignment on April 16, 2010, Ford pled not guilty to the charges. On November 30, 2010, after hiring new counsel, Ford changed his plea to not guilty by reason of insanity. A hearing was held on January 20, 2011 to determine his competence to stand trial after Ford was evaluated by NetCare. Ultimately, he was deemed competent.

{¶5} Ford's jury trial began on April 19, 2011. After jury selection and the State's opening statement, court recessed. During the recess, the State and the defense negotiated a plea agreement. Specifically the State and Ford agreed that Ford would plead guilty to the offense of Rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, with the specification withdrawn; Aggravated Burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree; and Kidnapping, in violation of R.C. 2905.01(A)(4), a felony of the first degree, with

the specification withdrawn. (Doc. No. 91). The remaining charges were to be dismissed.

{¶6} The plea agreement was then reduced into two separate, but unfortunately somewhat convoluted and overlapping written documents. The first of these documents is entitled "Sentencing Recommendation" (Doc. No. 90), (hereinafter referred to as the "written sentencing recommendation") which purports to reflect a proposed agreement between the prosecutor and defense counsel as to what would constitute an acceptable sentence to both parties in the case.

{¶7} The written sentencing recommendation is signed by the prosecutor, defense counsel, and Ford. It is also initialed by all three parties next to the recommended terms imposed. The written sentencing recommendation calls for a 20 year sentence; 10 years on each charge, with the 10 years for Rape and Kidnapping to be served concurrently, and the 10 years for Aggravated Burglary to be served consecutively to the other charges. Although these sentences would render Ford ineligible for judicial release, paragraph six of the written sentencing recommendation seems to imply otherwise, by reserving the state's right to oppose judicial release based only upon an unfavorable report from the correctional institution at the time judicial release is applied for.

{¶8} The second of these documents is entitled "Entry Withdrawing Plea of Not Guilty and Referral for Presentence Investigation" (hereinafter referred to as the "written plea agreement and entry"). However, despite its judgment entry styled caption, this document contains three separate parts, only the last of which purports to be the judgment entry of the trial court.

{¶9} The first part of the written plea agreement and entry sets forth a series of statements by Ford acknowledging his understanding of the negotiated plea, the charges, various possible sentences, advice of his counsel, the implications of the written sentencing recommendations he is agreeing to, and his basic Crim. R. 11 rights. Following this section, Ford's signature appears on the document. Like the sentencing recommendation, this portion of the written plea agreement and entry devotes two paragraphs to the possibility of judicial release and other sentencing options clearly not contemplated by other terms of the written agreement or the written sentencing recommendation.

{¶10} Following Ford's signature, the written plea agreement and entry continues with a statement by Ford's attorney, Sterling Gill, that Gill has explained the charges, penalties and "constitutional rights" to Ford and that in Gill's opinion, Ford is competent to enter the plea and that Ford does so knowingly, intelligently and voluntarily. Gill's signature then appears on the document.

**{¶11}** Following, Gill's signature, the written plea agreement and entry then proceeds for the first time with language of a judgment entry reciting that the foregoing matters have come before the court, were reviewed with the parties and signed in open court and that upon being advised by the court of his Crim. R. 11 rights, Ford entered his plea of guilty to the specified charges. Upon acceptance of the guilty plea and setting the matter for later sentencing pending receipt of a PSI, the document is then signed by the trial judge.

**{¶12}** In sum, despite the execution of the written sentencing recommendation which contains fairly specific sentence proposals, the written plea agreement and entry contains numerous provisions, some of which appear to be "boilerplate" in nature, also pertaining to various sentencing options and possibilities, many of which are not necessarily consistent with each other, with the sentencing proposals in the written sentencing recommendation, or with the actual Crim. R. 11 dialogue conducted by the trial court with Ford at the guilty plea hearing. Particularly troubling in this regard are statements in both documents which clearly discuss the possibility of judicial release under certain circumstances. These statements do not seem to be consistent with the terms of the plea bargain, with other statements within the same documents, or with the Crim. R. 11 dialogue, all of which simultaneously seem to acknowledge the intention of

the court and the understanding of the parties that Ford's sentence was to be such that Ford would not be entitled to judicial release at all.

{¶13} In any event, following the execution of the foregoing two documents, the court reconvened and conducted a thorough Crim. R. 11 colloquy with Ford before he entered his guilty plea. During the colloquy, Ford acknowledged he had read, signed, and discussed the written plea agreement and entry and the written sentencing recommendation with his attorney. The court then advised Ford that the recommendation was for twenty years; that this sentence would render Ford ineligible for judicial release; and that the written sentencing recommendation was not binding on the court. Specifically, the court explained that it was free to disregard the written sentencing recommendation and elaborated upon the maximum sentences that could be imposed, which in this case consisted of a 30 year prison term. Ford voiced his understanding and proceeded to plead guilty.

{¶14} When prompted, Ford asked no questions, said he did not need further time to confer with counsel, and stated he was satisfied with his representation. Following that, the court accepted the guilty plea, setting sentencing for June 2, 2011.

{¶15} The next day, on April 20, 2011, Ford filed a handwritten pro se motion to withdraw his guilty plea. In his motion, Ford stated that he thought the

plea agreement was "for a twelve to fourteen year sentence, with a possible judicial [release] after five years[.]" (Doc. No. 93). Ford said he received this "impression" from his attorney, Sterling Gill, while "signing the paperwork." *Id.*

{¶16} The court held a hearing on the motion on June 2, 2011, the same day sentencing was scheduled. On the day of the hearing, and notwithstanding his own signed statement in part two of the written plea agreement and entry to the contrary, Sterling Gill, counsel for the defendant, filed an affidavit in support of his client's claims in the motion. During the hearing on the motion, Mr. Gill did not testify. He did, however, speak on his client's behalf in narrative form. In this narrative, Gill said that he had discussed a potential reduction of charges with his client, and there was some dialogue with his client relating to judicial release. (June 2, 2011 Tr. at 6-7).

{¶17} Ford then took the stand and testified to his alleged misunderstanding, stating that he "felt [he] was kind of rushed" in signing the agreement. (June 2, 2011 Tr. at 15). He added that he did not get a chance to read the full plea agreement until he "got back to the jail," and that he was relying "on what [he was] told from [Gill]." (June 2, 2011 Tr. at 16, 36). Ford also testified that he regularly took an anti-depressant called Wellbutrin but that he did not get a chance to take the medication on the day of the trial. (June 2, 2011 Tr. at 17-18).

{¶18} On cross examination, Ford admitted that he had told the court during the Crim R. 11 colloquy that he understood the written plea agreement and entry and the written sentencing recommendation, and that he had informed the court that all of his questions were answered. (June 2, 2011 Tr. at 23-24). Ford also admitted during the hearing that he had told the court he had enough time to think about his "very important decision" and that he had "essentially agree[d] [he] would be sent to prison for twenty years." (June 2, 2011 Tr. at 25-26). Ford also testified that he understood the nature of a "recommendation," both then and now, and that the court was not bound to accept it. (June 2, 2011 Tr. at 28).

{¶19} The State called two witnesses at the motion to withdraw hearing, Deputy Eric Yocum and Melissa A. Chase. Deputy Yocum testified to overhearing Ford say, right after the Plea hearing, that he had just received 20 years. (June 2, 2011 Tr. at 42). Melissa Chase testified to another instance when Ford entered a guilty plea as a juvenile and later tried to withdraw it. (June 2, 2011 Tr. at 47-48).

{¶20} After the arguments were presented, the court found that the defendant did not show a reasonable and legitimate basis to withdraw his plea and overruled the defendant's motion to withdraw.

{¶21} Following the denial of the motion, the trial court adopted the parties' sentencing recommendation and sentenced the defendant to 20 years in prison.

**{¶22}** Ford filed this appeal, asserting the following assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS PLEA. THE COURT ABUSED ITS DISCRETION IN MAKING ITS DECISION.**

**{¶23}** Rule 32.1 of the Ohio Rules of Criminal Procedure provides that "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim. R. 32.1. Generally, a motion to withdraw a guilty plea that is filed prior to sentencing will be freely allowed. *State v. Drake*, 73 Ohio App.3d 640, 645, 598 N.E.2d 115 (8th Dist. 1991); *State v. Thomas*, 3d Dist. No. 1-08-36, 2008-Ohio-6067, ¶ 6.

**{¶24}** However, this does not mean that a motion to withdraw a guilty plea will be granted automatically. *Drake*, at 645, 598 N.E.2d at 118. "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawal of the plea." *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992), at paragraph one of the syllabus. It is within the sound discretion of the trial court to determine whether there is a legitimate and

reasonable basis for withdrawal of a guilty plea and, absent an abuse of discretion, the trial court's decision on the matter must be affirmed. *Id*. at 527, 584 N.E.2d 715. An abuse of discretion is more than an error of judgment; it implies that the decision was "unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149 (1980).

{¶25} Ohio Appellate Courts consider several factors when reviewing a trial court's decision to deny a defendant's pre-sentence motion to withdraw a plea, including: (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (the extent of the hearing on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges. *State v. Lane*, 3d Dist. No. 1–10–10, 2010–Ohio–4819, ¶ 21, citing *State v. Griffin*, 141 OhioApp.3d 551, 554, 752 N.E.2d 310 (7th Dist. 2001). We note that the trial court duly addressed and considered each of these factors in its judgment entry denying the motion to withdraw.

{¶26} At the outset we address Ford's argument that the plea was affected by his inability to take his daily dose of Wellbutrin. The first time Ford raised this

argument was at the hearing on the motion to withdraw. The defendant's pro se motion to withdraw failed to mention any dependency upon prescription medication that would affect his ability to accept the plea agreement.

{¶27} At the hearing on the motion, the only evidence produced of drug dependency was the following testimony of the defendant:

> **Q.    Okay. All right. Now, are you on any medication?**
> **A.    Yes, sir.**
> **Q.    And what medication are you on?**
> **A.    It's called Wellbutrin.**
> **Q.    Okay. And do you take that – how do you take that?**
> **A.    It's a pill I take it.**
> **Q.    When – when do they provide the medication?**
> **A.    We get lunch about 11, so I probably get it about 11:30 or some time [sic] after lunch depending on when it comes.**
> **Q.    And on the 19th do you remember what time you were transported here to the courtroom?**
> **A.    Like 7 or 8-ish in the morning.**
> **Q.    Did you get an opportunity to take your medication?**
> **A.    No.**
>
> **＊ ＊ ＊**
>
> **Q.    Do you know what the medication is for?**
> **A.    Yeah. I've been diagnosed with clinical severe depression.**
> **Q.    Okay.**
> **A.    And it's supposed to keep my spirits up I guess per se.**
> **Q.    Does that – just tell the court how – how that medication helps you.**
> **A.    Well, I mean, I'm a pretty unstable guy I guess I'd say. So taking this med it helps me just – helps me focus a lot more and just – yeah.**

(June 2, 2011 Tr. at 17-19).

**{¶28}** Additionally, defendant's counsel, who did not testify, commented in his general remarks to the court:

> **Mr. Ford indicates to me that he is prescribed a medication, and that has been provided to him on occasion. But that he normally receives that medication at 8 A.M. – now, Oh, I'm sorry with his lunch at noon. And on the day, and this could be documented, of the sentencing or of the plea, Mr. Ford was transported to the court at least – before 8 A.M. – before 8 A.M. And so he did not have an opportunity to take his medication. It was not taken. He needs this medication to deal with depression and to deal with anxiety. And I could tell you that when defendants sit in this chair, I think what's going on in their mind is not what's being said, but what is being heard, what they hear from their attorney. And without his medication, I wonder, in fact, it's our opinion, along with – along with the misunderstanding as to sentencing, which is the key portion of the plea negotiation, whether or not he was intelligently, knowingly, voluntarily entering his plea.**

(June 2, 2011 Tr. at 8).

**{¶29}** Aside from the testimony and accompanying narrative, no documentation or other evidence was produced showing that Ford was on medication or that he missed a dose. Also, no documentation or other evidence was produced showing the effects of missing one dose of the allegedly prescribed medication.

**{¶30}** Furthermore, during the Crim R. 11 colloquy at the plea hearing, the trial court specifically asked Ford about prescription medication.

> **The Court: As you sit here before me this afternoon, are you under the influence of any drugs, medication, or alcohol?**

**Defendant: No, sir.**

(Apr. 19, 2011 Tr. at 9).

{¶31} In sum, Ford had opportunity to mention the drug dependency to the court during the Crim R. 11 colloquy and failed to do so. Ford also had time to gather evidence about the nature of the alleged drug dependency before the hearing on the motion to withdraw, yet Ford produced no evidence of a chemical dependency other than the self-serving testimony. For all of the foregoing reasons we find Ford's argument as to any medication issue affecting the guilty plea to be well within the discretion of the trial court to determine to be without merit.

{¶32} Turning to the remaining arguments under the assignment of error, Ford takes greatest issue with the trial court's reasoning as to whether inadequate representation caused Ford's plea to be less than knowing, intelligent and voluntary. Specifically, it is Ford's contention that he completely relied on mistaken advice given to him by counsel when signing the plea agreement and that, as a result, he thought he would be eligible for judicial release and would be sentenced to no more than 12-14 years in prison. (Doc. No. 93).

**Q. Okay. And what were your thoughts there? Did you fully understand at the time you were in court the sentence by the court?**

**A. No, sir. I thought I was going to be getting 12 to 14.**

(June 2, 2011 Tr. at 16).

**{¶33}** In support of this claimed misunderstanding, Ford points to the

Affidavit filed by his counsel, Sterling Gill. As noted earlier, just before the

hearing on Ford's pro se motion to withdraw his guilty plea, Gill filed an Affidavit

in support stating he mistakenly advised Ford. The affidavit reads:

> **1.     My name is Sterling E. Gill, II attorney for defendant Geoffrey Ford.**
> **2.     This case was set for trial on April 19, 2011.**
> **3.     At the conclusion of jury selection and opening statements the trial recessed for lunch.**
> **4.     During recess discussions and negotiations occurred between counsel, defendant, State of Ohio and the court regarding resolution of this case short [of] continuing the trial.**
> **5.     At the conclusions of said discussions all of the above mentioned parties believed that this case would be resolved with the guilty plea that was entered herein.**
> **6.     Based upon the above no evidence was presented by either the State of Ohio or the defense.**
> **7.     The defense intended to call witness [sic] relative to the prosecuting witness's mental status.**
> **8.     The defense believed that the prosecuting witness's mental status and medications that she [sic] was taking was critical to the defense of consent.**
> **9.     Defendant Geoffrey Ford (D.O.B. 11/14/1990) was nineteen years old at the time of offense herein. As of the date of this affidavit the defendant is twenty years old.**
> **10.   This motion to withdraw plea was initiated by Mr. Ford, pro se, without knowledge of counsel, nor this [sic] parents.**
> **11.   Mr. Ford indicates that he did not fully understand the plea paperwork that he had signed and was under the impression from counsel that the plea was for "a twelve to fourteen year sentence, with a possible judicial release after five years".**

**12. Counsel believes that Mr. Ford was genuinely confused and did not fully understand the impact of the documents that he signed.**

**13. Mr. Ford had less than approximately one hour to read and understand some seventeen pages of documents that was [sic] presented to him.**

**14. Counsel believes that his signature was based solely on the understanding that he receive [sic] from counsel.**

**15. Counsel did indicate different numbers with respect to sentencing and judicial release eligibility.**

**16. In hindsight counsel mistakenly advised Mr. Ford as to eligibility for judicial release and sentencing.**

**17. Counsel agrees with the two forensic psychologist [sic] who opined that Mr. Ford "is presently mentally ill suffering from Polysubstance Dependent".**

**18. Based upon the foregoing counsel believes that Mr. Fords [sic] plea was not knowing, voluntary nor intelligently made but rather done under pressure and stress of the moment.**

(Doc. No. 107).

{¶34} Ford argues that the trial court did not take this affidavit into account when making its decision on the motion to withdraw, and that this affidavit points to counsel's deficiency. We disagree both with the notion the trial court "overlooked" the affidavit and that the affidavit points to a deficiency in representation meriting reversal.

{¶35} During the hearing on the motion to withdraw, the court noted that the affidavit was filed, stating that the court did not feel "the affidavit satisfie[d] the requirements of proof that are necessary in order to withdraw the defendant's plea." (June 2, 2011 Tr. at 5). We agree. The affidavit fails to corroborate Ford's

claim as to any specific incorrect advice or improper misrepresentation with regard to either judicial release or the possible sentence to be imposed in this case.

{¶36} Additionally, we note that as Ford's attorney, Gill executed and signed his own statement as part of the written plea agreement and entry, expressly representing that Ford "is competent to enter this plea and now does so knowingly, intelligently and voluntarily." (Doc. No. 91). As a member of the bar, Gill's sworn disavowal of that representation a few days later is troubling. Equally troubling are other statements in Gill's affidavit characterizing Ford's review of the written plea agreement and entry as confused, rushed and under stress or pressure, all of which directly contradict Ford's own signed statements in the written plea agreement and entry indicating that "I have had enough time to think about this important decision and I am certain that I want to proceed today and change my plea." (Doc. No. 91).

{¶37} Moreover, at the hearing on the motion to withdraw, Gill spoke only generally about the plea negotiations and stated that there was "an indication that one of the charges would be amended from an F-1 to an F-2." (June 2, 2011 Tr. at 6). Gill said that he had advised Ford of the possibility of judicial release, but only as to the third charge after serving the mandatory 10 year sentence on the first two concurrent charges. In other words, under such a scenario, Ford might only have to serve a total of 15 years in prison.

**{¶38}** In sum, Ford states in his motion that he thought he would be eligible for judicial release after five years, and was only going to serve 12-14 years in prison (based on credit for over a year of time served). His counsel, while implying that he mistakenly advised his client as to the possibilities of judicial release in the context of a ten to fifteen year sentence, never states that he told Ford he would be eligible for judicial release after five years or that he was assured any certain sentence.

**{¶39}** All of these inconsistencies and the credibility of these statements by Ford and Gill were legitimately within the province of the trial court to consider. Moreover, in contrast to these alleged misunderstandings, an examination of the record shows that there was significant and credible evidence showing a lack of confusion on Ford's part, particularly at the guilty plea hearing itself.

**{¶40}** For example, Ford argued at the motion hearing that he felt "rushed" when signing the paperwork. (June 2, 2011 Tr. at 15). However, at the plea hearing, the court gave Ford ample opportunity to ask questions or take additional time if he needed it, yet Ford gave no indication at any time that he was at all hesitant to enter his plea. Ford was asked multiple times about whether he had any questions, needed to consult his lawyer, and whether he had enough time to make his decision.

**COURT: Do you believe at this point in time you've had enough time to consult with your lawyer before proceeding with this plea agreement?**
**DEFENDANT: Yes, sir.**
**COURT: Has he talked to you about all ramifications in the case and answered all of the questions that you have?**
**DEEFNDANT: Yes, sir.**
**COURT: Are you satisfied with his advice and counsel?**
**DEFENDANT: Yes, sir.**
**COURT: The court has before it a 12 page entry withdrawing plea of not guilty, entering plea of guilty * * * And that would appear to me to be signed by you * * * and initialled [sic] by you throughout the document. Have you read this plea agreement?**
**DEFENDANT: Yes, sir.**
**COURT: And have you discussed it with your lawyer:**
**DEFENDANT: Yes, sir.**
**COURT: Do you understand the plea agreement?**
**DEFENDANT: Yes, sir.**
**COURT: Am I looking at your signature and initials on this plea agreement?**
**DEFENDANT: Yes, sir.**
**COURT: Did you initial and sign it after you read * * * the agreement and discussed it with your lawyer?**
**DEFENDANT: Yes, sir.**

**\* \* \***

**COURT: Do you have any questions of the court before we proceed further?**
**DEFENDANT: No, sir.**
**COURT: Do you want to speak to your lawyer before we go any further?**
**DEFENDANT: No, sir.**
**COURT: Have you had enough time to think about this very important decision?**
**DEFENDANT: Yes, sir.**
**COURT: A decision that you're making that essentially agrees that you would be sent to prison for 20 years.**
**DEFENDANT: Yes, sir.**

> **COURT: And you are certain then that you want to proceed to change your plea?**
> **DEFENDANT: What's that?**
> **COURT: Are you certain that you want to proceed today and change your plea and plead guilty to counts 1, 3, and 6?**
> **DEFENDANT: Yes, sir.**

(June 2, 2011 Tr. at 11-12, 22-23).

{¶41} Ford repeatedly stressed that he had no questions about the written plea agreement and entry or the written sentencing recommendation he claimed to have read, agreed to, and signed. He answered concisely and directly to each and every question asked by the court. Ford even asked for clarification the one time he didn't hear or understand. This could certainly give the trial court the impression that Ford was doing more than merely "going through the motions" as he suggests he was. (June 2, 2011 Tr. at 25).

{¶42} Also, at the plea hearing, Ford voiced no confusion or any misunderstanding stemming from his attorney's advice. Ford did not once give the court the impression that he thought the prison term was for something other than 20 years or that he would be eligible for judicial release.

> **COURT: Do you understand that if the court were to impose a maximum sentence in each case and run those sentences consecutively, that you would be facing 30 years in prison and a $60,000 fine?**
> **DEFENDANT: Yes, sir.**
> **COURT: Do you understand that if you're sentenced to a prison term of more than 10 years, that you are not eligible for judicial release?**

-20-

Case No. 14-11-13

**DEFENDANT: Yes, sir.**

**\* \* \***

**COURT: Do you understand, based upon my discussion on the record with you this morning, that the court's [sic] of the opinion that this sentencing recommendation renders you ineligible to apply for judicial release?**
**DEFENDANT: Yes, sir.**

(Apr. 19, 2011 Tr. at 15-17).

**{¶43}** The period of 20 years, which Ford acknowledged in the written sentencing recommendation, was mentioned at least 5 times during the Rule 11 dialogue. (Apr. 19, 2011 Tr. at 3-6, 22). In contrast, a period of 12-14 years was never mentioned once neither during the court's Rule 11 dialogue nor in either of the two written agreements signed by Ford. In addition, Ford said he understood the nature of consecutive sentences when it was explained to him at the plea hearing, and Ford said he understood that he would be ineligible for judicial release both times it was mentioned in the excerpts above.

**{¶44}** In fact, the sentence Ford received was exactly the sentence set forth in the written sentencing recommendation which he signed and acknowledged at the plea hearing. The first three provisions of the sentencing recommendation read:

**1. On Count I the Defendant is to be sentenced to a mandatory prison term of ten (10) years.**

**2. On count VI the Defendant is to be sentenced to a prison term of ten (10) years, to be served concurrent to Count I;**
**3. On Count III the Defendant is to be sentenced to a prison term of ten (10) years, to be served consecutive to counts I and VI for a combined prison term of (20) years;**

(Doc. No. 90).

**{¶45}** The sentence Ford received was precisely what he had bargained for. Moreover, Ford's assertions that he understood the written sentencing recommendation are consistent with his statements at the motion to withdraw hearing that he knew he was potentially facing life in prison and that, to him, less time seemed more favorable. (June 2, 2011 Tr. at 19).

**{¶46}** In sum, the evidence in favor of Ford having understood the full implications of his plea is substantial. Ford could admittedly read and write and was a graduate of high school. He claimed to have read and reviewed the written plea agreement and entry and the written sentencing recommendation. He signed them both and initialed next to the provision in the written sentencing recommendation providing for a term of imprisonment of 20 years. In addition, during the Rule 11 colloquy, Ford raised no questions, said he had enough time to consult with his attorney, and said he needed no more time.

**{¶47}** In addition to the other evidence illustrating that Ford understood, the State called Deputy Eric Yocum at the hearing on the motion to withdraw. Deputy

Eric Yocum testified to Ford saying he had just gotten twenty years directly after the plea.

> **Q. Deputy, after you separated the defendant from his friend or family member, would you please tell the court what the defendant indicated to you.**
>
> **A. Well, he was upset and he made a statement that why [sic] he couldn't hug her. He said he just received 20 years.**

(June 2, 2011 Tr. at 41-42). Deputy Yocum's testimony suggests that Ford grasped the fact that he was getting 20 years in prison at the time of the hearing, contradicting his later alleged misunderstanding. This would be consistent with Ford signing and initialing the above mentioned agreements and having no questions during the plea hearing.

{¶48} There is substantial evidence illustrating that Ford had no misunderstanding at all. But, even if there was a misunderstanding about the availability of judicial release, whether from Gill or from certain provisions of the written plea agreement, this type of misinformation has typically not risen to the level of deficient performance of counsel sufficient to constitute vacation of a guilty plea. In *State v. Xie*, a defendant similarly attempted to withdraw his guilty plea after being misinformed about eligibility for parole. *Xie* at 523. The Supreme Court of Ohio stated that "a defendant who bases a plea decision on parole eligibility will often be relying on a factor beyond the prediction of defense

counsel, and beyond the actual control of a defendant." *Id*. at 524-25. The court in *Xie* found that incorrect advice on parole did not meet the standards for ineffective assistance of counsel. *Id*. at 525.

{¶49} While we have not found sufficient evidence supporting the idea that counsel's performance was deficient, it is important to note that even if it was, and Ford actually had misunderstood, Fort would *still* have to show that he would have made a different decision had Gill given accurate advice. *See State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington* 466, US 668, 104 S. Ct. 2052 (1984).

{¶50} In this case, Ford was admittedly worried about spending life in prison, the lesser amount of time seeming favorable to him. (June 2, 2011 Tr. at 19). The court made sure that Ford was apprised of the fact he was going to prison for 20 years and he had no possibility of judicial release. Ford agreed to the sentencing recommendation knowing the court could disregard it and give him 30 years. He proceeded to plead guilty, admitting the facts read into the record.

{¶51} Based on the foregoing, the evidence does not suggest that Ford would have made a different decision had Gill's advice been correct as Ford was willing to endure up to thirty years in prison and was aware that he was facing it if maximum penalties were imposed. So even if Gill's performance was deficient, which we have determined it was not, and even if Ford misunderstood, which we

have determined there is significant evidence saying he did not, Ford still had to show that he would have made a different decision, and that is not established in this record.

{¶52} Nevertheless, with regard to all of the foregoing issues, we believe it is important to acknowledge that the record in this case is not without some confusion.   As noted earlier, we believe some of the unnecessary confusion in this case arises from the boilerplate language and check box formats used by the trial court in attempting to consolidate a written plea agreement, representations of counsel and a separate somewhat redundant written sentencing recommendation all into a single judgment entry accepting the plea.

{¶53} However, having acknowledged this, we also believe it is within the province of the trial court at a Crim. R. 32.1 hearing to weigh the credibility of these competing statements and claims of the parties with regard to all of the factors that go into the acceptance of a guilty plea. As such, it is our conclusion that in this case there was ample evidence, including in particular, the Crim. R. 11 dialogue at the plea hearing, which the trial court was entitled to find outweighed any other claims of misunderstanding by Ford or his counsel in exercising its discretion to overrule the motion to withdraw the guilty plea.[2]

---

[2] This court has previously upheld the trial court's discretion to overrule a motion to withdraw a guilty plea under similar circumstances albeit in a post-sentence motion involving the higher standard of manifest injustice.  *See* for example, *State v. Langenkamp*, 3d. Dist. No. 17-08-03, 2008-Ohio-5308.

{¶54} Turning to some of the other factors relied upon by the trial court, we note that a jury had already been selected and opening statements were given in this case. The court noted that some of the State's witnesses might not be available again and there were additional financial burdens on the State. It had been well over a year since the incident in question. So factor number one of *State v. Lane*, *supra*, has been appropriately addressed by the trial court.

{¶55} Ford also claims that failure to allow the guilty plea to be withdrawn prevents Ford from asserting the complete defense of "consent." However, in its entry denying the motion to withdraw, the trial court stated that "evidence presented up to the point of the Defendant withdrawing his plea was overwhelming in favor of the Defendant being found guilty." (June 3, 2011 JE at 18). "[Ford] agreed under oath with the recitation of the facts by the state in support of the indictment and agreed that he committed the acts." (June 3, 2011 JE at 18).

{¶56} Finally, Ford cites the case of *State v. Cuthbertson*, 139 Ohio App. 3d 895, 746 N.E.2d 197 (7th Dist. 2000), out of the seventh district court of appeals, arguing factual similarities to the case at bar. In *Cuthbertson* the defendant was also in the midst of a trial when he pled guilty, withdrew his plea a week later prior to sentencing, and was denied. *State v. Cuthbertson*, 139 Ohio

App. 3d 895, 896, 746 N.E.2d 197, 198 (2000). The trial court's denial of that motion then was overturned on appeal. *Id.*

{¶57} We find this case distinguishable from *Cuthbertson* for two reasons. First, Cuthbertson argued that he was pressured into signing his plea agreement by his mother. *Id.* at 897, 746 N.E.2d 198. Though Ford argues he felt rushed and that he misunderstood, he never states he was pressured or coerced into signing the agreement. Second, the court in *Cuthbertson* found that the prosecution presented no evidence of any prejudice to the State in allowing the plea to be withdrawn. *Id.* at 899, 746 N.E.2d 200. Unlike the court in *Cuthbertson* the State argued, and the trial court noted, several instances of potential prejudice in this case.

{¶58} In sum, we find the record contains significant credible evidence to support the trial court's finding that the nine factors of *State v. Lane* weighed in favor of denying the motion to withdraw defendant's guilty plea. Based on this record we find no abuse of discretion in the trial court's decision to deny Ford's motion to withdraw his guilty plea.

{¶59} For these reasons, Ford's assignment of error is overruled and the judgment is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concurs.**

**/jlr**